Good morning, brothers. My name is Ray. I'm the son of Chairman JPMorgan and Bill. The Keens, et al. It's been a long story. I'd like to reserve three minutes to go by one. I'd like to talk very briefly about the Keen-Keen issues. Watch where I was standing. Sorry, can you repeat? Watch where I was standing. I take it you need jurisdiction? Yes. Well, I wondered if we put in standing, standing is the element of jurisdiction. You have a life clause question. What relief can your clients get? We just want client juror. I'm sorry? We just want, I'll speak up. Excuse me for not doing so. This is statutory penalty number after this law. We've never put anything else beyond claimers in the actual bar. Most of the time people say in this area that it's possible to plead for actual damages because it was technically so complex and technical that only a person could possibly understand it. And so the only way to enforce it is with standing. I'm sorry, can you repeat? Your client suffered no injury, can't suffer any more injuries because the law is gone, right? So it's not like they are in danger that they will just use the method of calculation? I disagree with that, Your Honor, in the sense that at least... So you think they have suffered? They can suffer? No, they have. In fact, it's elementary that these cases accrue at the time of the violation because they are just statutory penalties. A judge, this is what Judge Ward called the rightness issue, he dismissed it out of hand when it was made below. And the simple fact of the matter is that if somebody violates this and gives you a statement that happens to be incorrect, that's the point until the injury is suffered. What happens later, Your Honor, that matters. He's putting payoffs on them. Well, you can't just simply say it's an injury, Your Honor. In fact, it is. I mean, it's one thing if you accept a loan, and then the bank changes interest on you, or maybe even could, and you say, well, you know, they haven't done it yet, but they still have this loan I'm paying them, and they could change the way they calculate interest on me. But in your case, the loan is gone, right? Well, Your Honor, that's something I think that is vital to the understanding in this case. You have to, on a general scale, it's what the contract terms were really meant to be, the old-school contract terms. What Judge O'Scallion said in the case I brought to your attention recently with the 28-J letter is if all that counts is what the contract terms say at the beginning, and here the contract terms, because of the Zorkian bank interest rule, absolutely said that they could charge whatever they wanted to, they could have avoided it in the simplest way by simply saying it was a fully advertising loan somewhere in the document, or by putting down an additional amount of interest. That wouldn't have changed the APR one bit. Didn't the disclosure list a finance charge? I'm sorry? Didn't the disclosure in the document you say was false? Didn't it list an amount for a finance charge? Well, yes, it did, and this is the mirror effect, Your Honor. The fact is that Tillon thinks he can't bring it together with the note and say bring it together. What it means is that Tillon's statement limits the legal view of the note. They're absolutely separate. The only contract term in Tillon's is the contract term in the note. Tillon is supposed to reflect the note. They're not read together. So the note didn't have an amount of the total finance charge? No, it didn't. They all state it. They all state it. They just stand against the street, which is, I think, 5.125% here. And the fact is, it's unintuitive, but in the world, and it's been 200 years in the making, we have bank interest, which allows the 1% on 5.125% to actually collect 5.19%. So why is it so difficult to put documents together? Your Honor, this is cited in the brief, but it's the most basic thing in Professor Harrell's book on truth in lending. The only way for a policy standpoint to make Tillon work is to make the Tillon statement reflect the terms of the contract. If one could read the two things together, one would never have a Tillon violation, but that would require that the consumer understands Tillon to the point where they would be happy to read those things together, which they normally can't. It just doesn't work. So in your briefing, you argued that there would be the potential actual harm from holders in due course having such a right to use the 365, 360 method. Do you contend that the entity that actually refinanced that loan and the payment under which it was paid off has some rights to proceed and to use that higher interest calculation method? Your Honor, I say that yes, but all I was doing was responding to the idea that intent doesn't matter at the beginning. By saying, of course, the contract terms don't matter at the beginning, but what I had done to me was to say, look, as long as Chase doesn't intend to do something that controls the situation, well, there's a federal regulation substating one. That's not how we do it anymore. They used to look at the tax loan terms of agreement. So it was a defensive argument to say, look, the intent of Chase doesn't mean very much because these things are routinely sold out of no place else to anybody. That is the market for old loans. These aren't being used in all kinds of private transactions. I do want to make the point to you, this is an entirely technical case. Nobody's saying it's done. Everybody who's worked with Zilla, and some of you have, understands this is sort of the princess and the pea, and the pea is way down there. In Zilla, for instance, no matter how many matches you pile on top of the offense, it reads all the way down. If there's an error, you hear the error. I'm sorry. You told me that the Zilla statement didn't have a total finance charge, but I think I'm looking at it. Isn't that ER359, and doesn't it say the finance charge is 195,104.49? Your Honor, I did not mean to communicate that. Of course it has the finance charge. In fact, it is just too low at 76%. Exactly. So if they tried to charge more interest, this part of the Zilla would be incorrect, and then they would have a contract violation, right? They can't do that. That's wrong. I'm sorry. Why? Why is that wrong? Zilla is not part of the contract. So then you also told me the note. So, I mean, they have a contract here once they've entered the loan. They have a contract from one of these documents. It's about both. Yes, and we're right down to the critical question. Let me explain it to you. The contract says 5.125% interest. That's what they are obliged to charge, but because the anomaly of paying interest goes back hundreds of years, it is recognized by all the courts in this country. I understand your 365, 360, but they can't do it without violating other terms of the same document because the amount would become too much. No, because the other document, the contract says it has a dragnet clause that is so broad that it absolutely prevents them from going to the end of the note and the collective principle of that note. So what if we disagree with you about that? So hypothetically, we disagree with your contract interpretation. So we don't think any bank could ever charge 365, 360 once they've disclosed the finance charge that shows less than that. Do you still have standing? So if you're going to lose on the merits, do you still have standing, or do you not even have standing? Well, Your Honor, the only final theory in this court states that if I lose on the merits, I lose on the merits. I mean, I couldn't disagree more that you could possibly make a decision that said what the dragnet clause, that it's possible from contract interpretation that banks could give out a 50, a 365, 360 to say that they couldn't charge X. So can you tell me what words in this clause you're talking about that would drop a specific number? And how do you get there? You have the contract in front of you. There is a provision in that contract that sits down towards the instance if I owe any money on the last day, I will pay. What are you talking about? It's all good. Your Honor, I know. He keeps accords with our terms. What are you talking about? I don't know. What are you talking about? I don't know. It's looking good to me. It's looking good to me, Your Honor. You have the axioms. I have my axioms. I'm looking right at it. I'm looking at the 403. 403. ER 403. It's ER 403, 6671. Is that right? Are we on the right page? I'm pretty sure the 403 is ER 403. It's page 6671. Your Honor, is there anything on that? I don't know. I've been finding this since there, as quoted in the complaint. It's just, I was caught off guard by the question. If I can sit down and find it, it might take me another few moments. But. Well, you can go to the other side, and then we'll give you a medical report. All right. That's fine. But when you come to court, this is the kind of questions we ask. You need to be prepared to talk about the doctor, because this is the one way in which you can help us. Before you try it, is by pointing to the things in the document that support your case. This is called preparation. I understand, Your Honor. You're so patient. I just thought I'd do it, and I made a mistake in schedules. Okay. Well, we'll give you a list for a while. We'll go to you guys, and then we'll go to the other side. Good morning, and may it please the Court. Jonathan Bassey on behalf of Appellee J.P. Morgan Chase. And let me begin by agreeing with Judge Friedland's comments. The loan documents here would not allow any lender to use the 365-360 method. This is a standard Fannie Mae form document. That is used for the plaintiff's loans. We're not aware of any lender anywhere who's ever used a 365-360 method of interest calculation under this loan. And the plaintiffs represent a punitive class, and they haven't. Their argument, as I understand it, is they may not have, but the loan allows them to do it. Yes. And that was not disclosed. I think that's what you're talking about. Absolutely. Well, what is it about the loan documents that precludes them from doing it? Right. There are several features of the loan documents, and both the note and the deed are in the record, as well as the appeal legislation. Yes. So the loan, the note itself, which is ER-324, says that they need to… I'm sorry. This is a different note in the form. I'm sorry. This is… That's fine. There are just two versions of the plaintiff's complaint, Your Honor. I think they attached the note twice, and they exert the record one with the amendment legislation. I'm sorry. Sure. That's what I was looking to see. Okay. I'm sorry. ER-324. I was looking at ER-324. I think that's the first amendment. Okay. That's fine. I'm sorry. ER-327. I'm sorry. ER-325. I'm sorry. Do you agree with what he's saying, Your Honor? Yes. I think it is true, Your Honor. I apologize. Well, the note itself says interest will be paid, and if you look at Section 3, payments, it discusses in Section 3A, I will pay these payments every month until I've paid all the principal and interest, and I will pay them until December 1, 2044. And then Section 3B says the monthly payment will be $1,105.94. And it's undisputed that the loan, the 30-year fixed loan, fully amortizes under the monthly payment specified. In other words, if you use 365-360, that monthly payment would be higher. Correct. It would be the wrong monthly payment. This is a 360-360 monthly payment. That's what Judge Oreck found. That's in the excerpts of record at page 7, which is Judge Oreck's opinion. So, the Spokaeo issue is like a mental puzzle here, though, because they say we can see for a moment that we agree with you on that contract issue. So, does that mean we have to assume for purposes of standing that they don't have a theory at all, or do we give them the benefit of their assumptions on standing that they think you still could increase the amount so they were injured because they weren't told what to do with their loan involved? So, they were injured when they were told the wrong thing. Do we kind of give them the benefit of that theory for purposes of standing, and then they lose all the merits? Or is the merit so screwed up here that they don't even do standing? Well, we believe, we do agree that their claim is insubstantial. Before I forget, I want to mention, so that's just a note. In the deed itself, as Your Honor pointed out, there's no balloon payment permission. There's also the dealer disclosure statement that Your Honor mentioned, and there's a record at page 433. All of those documents show there's no balloon payment. This is the amount. How to resolve the case. I would think the easiest way to resolve the case is just to dismiss the appeal, either for lack of standing or the plaintiff's part to continue to prosecute it since they lost standing when they paid off their loan in December 2018. No, no, no. I guess I'm not sure I follow you there because I actually think he has a good argument that these violations occur when the disclosure happens. And if we grant him the assumption that this really could have been increased, that he was given an incorrect disclosure, and that it not include that, and there's statutory damages. We're perfectly comfortable having the court affirm on the ground that Judge Borak articulated, which is they're on the failure to make sustained a claim on the charge. But Judge Borak said you deal with standing, and we have to deal with standing to figure out if they have jurisdictions. And why don't you think we can avoid this OKO issue? Well, if Your Honors, I guess there's standing at two points in time. One is did they have standing when they filed their complaint, and then did they have standing now? And the standing when they filed the complaint, I think is a slightly, is a different issue in some ways. Perhaps, well, perhaps more generous to them since there was this speculative future possibility that the lender might change its practices in the future. So after the time they filed their complaint, did they have standing under scope? We don't, we don't think their claims are weaker than the Spokio and the Robbins plaintiffs and the Robbins plaintiffs in Spokio because that person was alleging an actual, actual dissemination of actually false information that affected his employment prospects. Your Honors, I mean, you may disagree that it's false, but they think they're alleging a false disclosure. It's a false statement also. Well, in the Robbins case, this court just recently on remand identified a number of He was actually unemployed. That's different from the kinds of injuries here in our race in response to the CFPB's brief date went through the Spokio factors, which are the history, common law, and the judgment of Congress. And here in particular, there's no, it's clear that Congress did not envision the disclosure of probabilistic, conjectural future events. But Congress did think that the incorrectly stated interest rate is an injury. And that is their theory. So is that, I mean. If it's actually implied, certainly Congress is. Congress didn't say it had to be implied. I mean, it's the disclosure itself. Well, in 1601A, if the other Congress didn't use the word complete disclosure, it said meaningful. And in the Ford Motor against Mulholland case in 1980, the court distinguished between meaningful disclosure and complete disclosure. And I think Judge Horak was clearly right to say that there's no duty to disclose a method of interest rate calculation if you're not actually using it. But that gets to the, I think, I don't know, it's related. It seems like it does have the merit. So I mean, if we assume this was an incorrectly stated interest rate, I think Congress thinks the disclosure of that, whether it really turns out to be an injury or not, the disclosure itself is an injury because it might affect your loan decision. Well, except this is a peculiar time because it's not that the interest rate is misstated. It's that it might be misstated based on something in the year 2044. But let me just return to the bigger picture. We are comfortable with a different lens on the merits. That's completely something that we would advocate. If your honors feel the need to address Article III, we think the simplest way to address it is to ask whether they have standing. Now, you don't need to ask the question whether they have standing. That's right. That's right. So we have to figure out whether the district court judgment has to be vacated to say, have I have standing? Well, I don't think you have to. We would urge you not to vacate. I don't think you have to address that. I mean, I know there's this Steel Company against Citizens case from 1998. It says you have to address jurisdiction first, but then the Supreme Court later in Sinochem, which is 2007, said that the court can look at any threshold issue for resolving a case. In Sinochem, the court said you could dismiss on foreign nonconvenience grounds rather than reaching jurisdiction. So we think it would be permissible for this court to submit to dismiss the appeal for a lack of standing now without vacating the district court judgment. Well, how? I mean, they have a claim for statutory damage. It's based on a disclosure that happened a long time ago. How does that evaporate? I mean, I don't think a claim for damages evaporates even if something changes later. Well, because the claim is premised on a speculative future event that might happen in 2044, and now we know that event can never happen. Mr. Kaczynski mentioned that disclosures no longer exist. They are no differently situated than anybody else in the world who doesn't have a mortgage which is. But why is that not the failing to state a claim as opposed to having a, having alleged at least a particularized injury that turns out not to be cognizable? I agree that it shows that there's no merit to the claim, and we do not, we are not beneficiating the Article III approach here. In 1935, was there a financial damage? That is correct. That is correct. You can't deny that there is. There's something, there's something about, there's something about the quality of gamesmanship where the point keeper brings a claim and loses and then pays off the loan and says now we want to go to state court and incur all the expenses of re-litigating. So I don't think our concern is completely unfair. But I do also think, when Your Honors pressed me, I want to be clear. We are, we believe Judge Horak was correct. Judge Horak did not, as opposed to counsel pointed out correctly, Judge Horak rejected our right to disargue with Judge Horak addressed the merits. We're perfectly comfortable with Your Honors addressing the merits. If you, when you're asking about what I think the appropriate disposition is under the Article III issues, I think Your Honors are secondary points. You're not, you're not urging that as the appropriate way of resolving the case. But I do think if you're going to grapple with Article III, the simplest and easiest approach is to ask whether they have standing now or is the controversy live now as opposed to what it was in the, when they brought the complaint. Just because of this peculiar nature of the complaint, this claim was not that the, that the finance charge was misstated. So let me make sure I understand. So by saying we know what you say and I spoke, so we have no standing now. What is the consequence of that? I think it's just simply an order dismissing the appeal, like leaving intact the district court judgment. But you agree that if we, if we hold that there never was standing, then we have to vacate the district court judgment? We hope you would not do that, Your Honor. Okay. Thank you. We'll give you a minute for rebuttal. Any other questions or anything? I don't think we have any time at all for questions. Welcome to this room. Go ahead. I found the magic, the magic tooth piece down here. This is ER 324, Paragraph 3A, an ultimate sentence. It begins, if on December 1, 2044, I still owe amounts under this vote, I will pay those amounts in full on that date, which is called the maturity date. How is that possibly changing the next B, which tells you how much you owe every month for the life of the loan? Because under 365, 360, that is a partial statement. All that is is a statement that you have to make a certain number of loan payments. No, it says the monthly payment will be in the amount of 1,105.94. If they did 365, 360, the amount would be higher than that. If they chose to disclose it, in other words there's nothing in this contract that says that that is all you have to pay. It's a function of how they pay. How do you agree that my monthly payment will be in the amount of U.S. 1,105.94 without saying it's an amount you have to pay? I'll answer more briefly. It doesn't say that it's a fully advertised payment. That's all that's wrong with this note. If the title of the note was multi-stage fully advertising note, they wouldn't have a problem. But fully advertising is the missing part of the contract. It's as simple as that. There are two ways to fix it. If you put this. Is there any case in any state ever interpreting a contract that has an amount of payment that says you have to add extra words to do what you're saying which is required by contract? Is it an forever hold? I can't go back to my desk and keep looking, but the 365, 360 thing has been used like that for a long time. I understand it is sometimes used, but I don't think any contract could ever state a payment that's inconsistent with using it and still be a valid contract that you could enforce. It doesn't make sense as a contract matter. It is a contract matter unless you make an affirmative statement, given the 365, 360 dichotomy. The fact is that it's not a fully advertising note. You're implying that it's a fully advertising note. Some statute, from a contract standpoint, says that there's any ambiguity whatsoever, and that's the standard by which we're judging this contract. In one good reason, as fully advertising, when it might not be because they have a legal right under that bond payment, or both out of the direct clause, then that triggers the issue. If you didn't have the direct clause, it wouldn't be a problem. If they listed the extra payment, which doesn't move APR, they wouldn't have a problem.
judges: Kozinski, Friedland, Arterton